AO 91 (Rev. 08/09) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Southern District of Ohio

| | |
|---|---|
| United States of America<br>v.<br>MASAI "LEE" WILLIAMS<br>3478 HAZELWOOD AVENUE, APARTMENT #8<br>CINCINNATI, OHIO 45211<br><br>*Defendant(s)* | )<br>)<br>) Case No. **1:12MJ -276**<br>)<br>)<br>) |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __03/01/12 TO 08/29/12__ in the county of __HAMILTON__ in the __SOUTHERN__ District of __OHIO__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. 846 | CONSPIRACY TO POSSESS WITH INTENT TO DISTRIBUTE, AND DISTRIBUTION OF, 1000 KILOGRAMS OR MORE OF A MIXTURE OR SUBSTANCE CONTAINING MARIJUANA, A SCHEDULE I CONTROLLED SUBSTANCE, IN VIOLATION OF 21 U.S.C. 841(a)(1)(A)(vii) |

This criminal complaint is based on these facts:
SEE ATTACHED AFFIDAVIT IN SUPPORT OF COMPLAINT.

☑ Continued on the attached sheet.

_____
Complainant's signature

JOSEPH M. REDER, S.A., DEA
*Printed name and title*

Sworn to before me and signed in my presence.

Date: __08/29/2012__

_____
Judge's signature

City and state: __CINCINNATI, OHIO__   KAREN L. LITKOVITZ, U.S. MAGISTRATE JUDGE
*Printed name and title*

**Attachment B**

Your affiant, being duly sworn, hereby does depose and say:

1. I am a Special Agent with the U.S. Drug Enforcement Administration, and have been so employed since January 2006. I have completed basic law enforcement training at the DEA Academy in Quantico, Virginia and have received extensive training in the investigation of offenses involving controlled substances.

2. Facts set forth in this complaint are based on personal knowledge derived from my participation in this investigation and upon information presented to me by other law enforcement officers involved in this case. The sources of my information and beliefs include:

    a. Oral and written reports about this and other investigations which I have received from Special Agents of the DEA and other law enforcement authorities;

    b. Physical and electronic surveillance conducted by Special Agents of the DEA and/or other law enforcement authorities and which have been reported to me either directly or indirectly;

3. The Attorney General of the United States has empowered me with Title 21 authority, which authorizes me to seize property, conduct search warrants, and make arrests of persons for violations of the Controlled Substances Act. This affidavit is made in support of a complaint against Masai "Lee" WILLIAMS, David "Dirty" ALEXANDER, Quincy SHOWES, Darias "Ghizzle" JACKSON, Bruce "Donnie" STEWART, Antonio "T.O" HOWARD and Randy STEELE for conspiracy to distribute marijuana, in violation of Title 21, United States Code, Section 841 (a)(1) and Title 21, United States Code, section 846. Since this affidavit is being submitted for the limited purpose of establishing probable cause authorizing the arrests of WILLIAMS, ALEXANDER, SHOWES, JACKSON, STEWARTS, HOWARD and STEELE. I

1

have not included each and every fact and circumstance which I am aware. I have set forth only those facts which I believe are necessary to establish such probable cause.

4. For approximately eight months, the DEA Cincinnati Resident Office, the FBI Cincinnati Office and the Cincinnati Police Department have been investigating a large scale marijuana trafficking organization in the Cincinnati, Ohio area which began at the least on or about March 1, 2012 and continued up to the date of this complaint.

5. On May 25, 2012 undercover agents, picked up approximately $500,000 in U.S. Currency from WILLIAMS and ALEXANDER and then again on June 5, 2012 undercover agents picked up approximately $400,000 in U.S. Currency from WILLIAMS, all of which agents believe to be proceeds from illegal marijuana trafficking. As a result of the undercover money pick-ups and further investigation into WILLIAMS and ALEXANDER the DEA Cincinnati Resident Office began a court-authorized Title III wire interception on WILLIAMS' cellular telephone beginning on June 28, 2012 and ending on August 8, 2012.

6. During the DEA wire interceptions over WILLIAMS' cellular telephone agents were able to identify Quincy SHOWES, Darias JACKSON, Bruce STEWART, Antonio HOWARD, Randy STEELE and others, as co-conspirators of WILLIAMS and ALEXANDER in the illegal trafficking of marijuana. Based upon intercepted calls, surveillance and your affiant's training and experience, your affiant believes that WILLIAMS and ALEXANDER would speak directly to the marijuana source of supply located in Dallas, TX, and make arrangements for loads of marijuana to be sent to the Cincinnati, Ohio area. Once the shipments of marijuana reached Cincinnati, Ohio the marijuana was given to SHOWES who acted as a drug stash house keeper and would distribute the marijuana to STEWART, STEELE, HOWARD, JACKSON and others.

2

7. Specifically, on July 7, 2012, agents intercepted a series of calls between WILLIAMS and his marijuana source of supply discussing a sample of marijuana that was to be delivered to the Cincinnati, Ohio area later that day. Shortly thereafter, agents intercepted a series of calls between WILLIAMS and STEWART discussing the delivery of the sample of marijuana. During these calls, STEWART agreed to meet the courier on behalf of WILLIAMS at 2888 Fischer Place, Cincinnati, Ohio. At approximately 8:30 pm, surveillance agents observed STEWART meet with the courier and take possession of a sample (approximately 1 kilogram) of what appeared to be marijuana.

8. On July 8, 2012, agents intercepted a series of calls between WILLIAMS and his marijuana source of supply discussing a delivery of approximately 320 pounds of marijuana that was to be delivered to WILLIAMS and ALEXANDER later that same day. Shortly thereafter, agents intercepted a series of calls between WILLIAMS and SHOWES where SHOWES agreed to meet the courier and take possession of the marijuana shipment. At approximately 9:00 pm on July 8, 2012, surveillance observed the same courier that had delivered the marijuana sample the previous night arrive into the area of 2888 Fischer Place, Cincinnati, Ohio. Surveillance lost visual surveillance on the courier van but intercepted calls between SHOWES and WILLIAMS revealed that SHOWES had in fact taken possession of the marijuana, described the marijuana to WILLIAMS and complained to WILLIAMS about the quality of the marijuana. Shortly thereafter, agents intercepted calls between WILLIAMS and his marijuana source of supply during which WILLIAMS complained to the source of supply about the quality of the marijuana. Between approximately 10:20 pm and 10:45 pm that evening, agents intercepted a series of calls between WILLIAMS and SHOWES during which SHOWES stated that he was going to come to WILLIAMS' apartment to bring WILLIAMS a sample of the marijuana that was delivered in

3

order to show WILLIAMS the poor quality of the marijuana.

9. On July 9, 2012, at approximately 12:40 am, agents intercepted a call between WILLIAMS and ALEXANDER during which the two men discussed the fact that they need to talk with the marijuana source of supply about the quality of the marijuana that was delivered. In addition, WILLIAMS and ALEXANDER discussed how much they would charge people for the marijuana that was delivered.

10. On July 9, 2012, at approximately 11:00 am, surveillance observed WILLIAMS, ALEXANDER and SHOWES meet at 2851 Shaffer Avenue, Cincinnati, Ohio. Agents have identified this address as one of the marijuana stash houses utilized by WILLIAMS and ALEXANDER and their drug trafficking organization. At approximately 12:30 pm, agents observed STEWART arrive at 2851 Shaffer Avenue, Cincinnati, Ohio and pick up a package of marijuana from SHOWES.

11. On July 10, 2012, agents established surveillance on 2851 Shaffer Avenue after intercepted calls revealed that WILLIAMS and SHOWES planned to meet at 2851 Shaffer Avenue and then make a delivery of marijuana to Randy STEELE. At approximately 12:30 pm, surveillance observed SHOWES meet with STEELE at 3277 Werk Road where SHOWES transferred a large cardboard box to STEELE that appeared to contain marijuana. Surveillance was maintained on STEELE after he left the meeting with SHOWES. Surveillance observed STEELE drive to the Urban Active Fitness Club located at 5131 Glencrossing Cincinnati, Ohio, enter the fitness club and then work out for approximately one hour. While STEELE was inside Urban Active, Cincinnati Police Officer Robin Elliott parked next to STEELE's vehicle, got out of her car to look more closely at the Explorer and noted that there was a strong odor of marijuana emanating from the Explorer.

12. On Wednesday July 11th, 2012, at approximately 2:00 p.m., agents intercepted a series of calls over the court-authorized wire interception of WILLIAMS' cellular telephone. The intercepted calls were between WILLIAMS and SHOWES during which WILLIAMS directed SHOWES to deliver approximately 50 pounds of marijuana to "T.O." at 2888 Fischer Place, Cincinnati, Ohio. As a result of these calls surveillance was established on 2888 Fischer Place, Cincinnati, Ohio. Upon arrival it was noted that an unknown black male was standing on the sidewalk and appeared to be acting as a "look-out" for 2888 Fischer Place. Surveillance observed that a white 4-door KIA bearing Ohio license plates "FLD-5826" was backed into the driveway with its trunk open, facing a dark blue Dodge Magnum that was also parked in the driveway with its trunk open. Ohio license plate "FLD-5826" returns to a white KIA and is registered to Antonio HOWARD, also known as "T.O.," of 11576 Framingham Drive, Cincinnati, Ohio. Agents observed the "look-out" give SHOWES a signal, after which SHOWES transferred several large duffel bags from the trunk of the Dodge Magnum into the trunk of the white KIA. Immediately after the duffel bags were transferred into the KIA, Antonio HOWARD entered the KIA and left 2888 Fischer Place, Cincinnati, Ohio.

13. Surveillance units followed HOWARD in the KIA until he pulled onto Millvale Court. HOWARD appeared to meet with an unknown black male while parked on Millvale Court and appeared to open the trunk of the KIA for the unknown black male. Surveillance was unfortunately lost at that time and agents were not able to observe any other activities. Your affiant has worked cases in the past, to include a wiretap investigation, where Millvale Court was the central location for illegal drug trafficking. Millvale Court is known in the law enforcement community as a high crime area and is specifically known as an area with high drug activity. It is your affiant's belief that HOWARD was on Millvale Court to distribute the 50 pounds of

marijuana he had just received from SHOWES.

14. On July 17, 2012, agents intercepted calls between WILLIAMS and his marijuana source of supply during which the two men discussed WILLIAMS preparing $100,000 in illegal drug proceeds for the source of supply. Throughout the day on July 17, 2012, agents conducted surveillance on WILLIAMS, ALEXANDER, SHOWES and STEWART. During surveillance, agents observed SHOWES purchase two white shopping boxes from a Walgreens located on Harrison Avenue while agents intercepted calls between SHOWES and WILLIAMS discussing the best type of boxes to be used. Surveillance agents then observed WILLIAMS, ALEXANDER, SHOWES and STEWART drive to and from 2888 Fischer Place, Cincinnati, Ohio, 3478 Hazelwood Avenue, Cincinnati, Ohio, 2851 Shaffer Avenue, Cincinnati, Ohio and 2545 Meyerhill Drive, Cincinnati, Ohio and 2516 Orland Avenue, Cincinnati, Ohio throughout the day until they all met at 2847 Werk Road, Cincinnati, Ohio. While at 2847 Werk Road, surveillance observed SHOWES deliver the two white shipping boxes he had purchased at the Walgreens to WILLIAMS. When SHOWES delivered the boxes to WILLIAMS they were flat and not folded into a box shape. Agents then observed WILLIAMS and ALEXANDER enter 2847 Werk Road with the two flat white boxes and a green roll of packing tape. After approximately 20 minutes, agents observed WILLIAMS and ALEXANDER exit 2847 Werk Road with the two white boxes, now folded into a traditional box shape, and observed the two men place the white boxes into the trunk of SHOWES' Lexus. Prior to WILLIAMS and ALEXANDER exiting 2847 Werk Road, agents intercepted a call between WILLIAMS and his marijuana source of supply where WILLIAMS described to the source of supply that each white shipping box had a shoe box inside of it and that each shoe box contained $50,000. Surveillance followed WILLIAMS, ALEXANDER and SHOWES to 8273 Georgianna Drive, Cincinnati

Ohio and watched as SHOWES backed his Lexus into the driveway of that address and then WILLIAMS, ALEXANDER, SHOWES, STEWART and an unknown black male all went to Buffalo Wild Wings for dinner. Agents then intercepted a series of calls between 6:00 pm and 9:30 pm between WILLIAMS and his marijuana source of supply, discussing when the courier would arrive and the fact that the courier was driving a FedEx van but worked for the source of supply. At approximately 9:30 pm, surveillance agents watched as the unknown black male that went to Buffalo Wild Wings with WILLIAMS, ALEXANDER, SHOWES and STEWART gave the two white shipping boxes to the FedEx driver who had parked in the driveway of 8273 Georgianna Drive, Cincinnati, Ohio. Surveillance was maintained on the FedEx van until approximately 11:45 pm, when Indiana State Troopers conducted a traffic stop of the FedEx van and recovered approximately $200,000 in illegal drug proceeds, including over $100,000 wrapped inside of the two white shipping boxes prepared by WILLIAMS, ALEXANDER, SHOWES and STEWART.

15. On August 1, 2012, intercepted calls between WILLIAMS and several of the co-conspirators revealed that a meeting was going to take place that afternoon at WILLIAMS' home located at 3478 Hazelwood Avenue, Apartment #8, Cincinnati, Ohio. Surveillance was established at 3478 Hazelwood Avenue, Cincinnati, Ohio and agents observed WILLIAMS, ALEXANDER, SHOWES, STEWART, JACKSON and others meet.

16. On August 7, 2012, intercepted calls between WILLIAMS and his marijuana source of supply revealed that a load of over 500 pounds of marijuana was due to be delivered to WILLIAMS and ALEXANDER on August 8, 2012. Shortly after these calls were intercepted agents intercepted calls between WILLIAMS and SHOWES where SHOWES was instructed to rent a U-Haul on behalf of WILLIAMS and ALEXANDER in order to transport the marijuana

due to be delivered the following day.

17. On August 8, 2012, agents intercepted calls between WILLIAMS and his marijuana source of supply coordinating the delivery of marijuana to WILLIAMS and ALEXANDER. As a result of these calls surveillance was established on WILLIAMS, ALEXANDER, SHOWES and JACKSON. Surveillance observed what appeared to be a delivery of marijuana to the U-Haul rented by SHOWES on August 7, 2012 and then followed the U-Haul after the delivery was complete. Surveillance noted that WILLIAMS and ALEXANDER followed the U-Haul on the highway until it was stopped by the Ohio Highway Patrol who identified the two occupants of the U-Haul as Darias JACKSON and Quincy SHOWES. Troopers located approximately 577 pounds of marijuana inside the U-Haul.

18. Based upon intercepted calls, drug seizures and undercover money pick-ups your affiant believes that WILLIAMS, ALEXANDER, SHOWES, STEWART, HOWARD, JACKSON and STEELE are responsible for trafficking in excess of 1000 kilograms of marijuana. The $500,000 in U.S. Currency picked up on May 25, 2012 is equal to approximately 700 pounds of marijuana; the $400,000 in U.S. Currency picked up on June 5, 2012 is equal to approximately 550 pounds of marijuana; intercepted calls over the wiretap of WILLIAMS telephone call revealed the July 8, 2012 shipment equaled approximately 320 pounds of marijuana; the August 8, 2012 stop of the U-Haul by the Ohio Highway Patrol driven by SHOWES and JACKSON equaled approximately 570 pounds of marijuana and intercepted calls over the wiretap of WILLIAMS telephone revealed that WILLIAMS and ALEXANDER were to receive approximately 75 pounds of marijuana on August 15, 2012. This list is not an exhaustive list of all shipments received by WILLIAMS, ALEXANDER, SHOWES, STEWART, HOWARD, JACKSON and STEELE but rather is put forth to show that the organization is

responsible for weights in excess of 1000 kilograms of marijuana.

19. Based on the above facts and circumstances listed above, and on my experience and training, I have reason to believe, and do believe, Masai WILLIAMS, David ALEXANDER, Quincy SHOWES, Darias JACKSON, Bruce STEWART, Antonio HOWARD and Randy STEELE conspired to possess with intent to distribute a quantity in excess of 1000 kilograms of a Schedule I controlled substance to wit marijuana in violation of Title 21, United States Codes, Sections 841 and 846. Further, your affiant sayeth naught.

Joseph M. Reder
Special Agent
Drug Enforcement Administration


Sworn to and subscribed before
me this 29th day of August 2012


The Honorable Karen L. Litkovitz
U.S. Magistrate Judge
Southern District of Ohio

9